UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIN TONKYRO,
DANA STRAUSER,
KARA MITCHELL-DAVIS,

Case No.:8:16-cv-2419-t-36AEP

    Plaintiffs,

v.

DAVID J. SHULKIN, MD, *Secretary,*
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

_____/

## MOTION TO AMEND COMPLAINT AND TO ADD ADDITIONAL PLAINTIFF

Plaintiffs Erin Tonkyro, Dana Strauser, and Kara Mitchell-Davis move this court for leave to amend their First Amended Complaint pursuant to Federal Rules of Civil Procedure 15(a) and 20 to add and join Yenny Hernandez as an additional Plaintiff in this case.  The Second Amended Complaint is attached as Exhibit A.[1]  It also reflects that David J. Shulkin, M.D. is now the Secretary of Department of Veterans Affairs, cleans up a couple of typos, separately identifies the specific claims relating to each plaintiff, and sets forth the facts showing conformity with the cited Rules.

### Background

1.   The Plaintiffs Tonkyro, Strauser, and Davis originally filed their complaint in Federal Court on August 23, 2016 (Doc. 1).  The Defendant answered on November 28, 2016 (Doc. 16).  On December 14, 2016, the Parties jointly filed a Case Management Report (Doc.

_____

[1] Given its length, Exhibit B contains the more significant additions in bold.

18).   On page 1 of the Case Management Report, the parties agreed that "Motions to Add Parties or Amend Pleadings [Court recommends 1-2 months after CMR meeting]" would have a deadline of March 31, 2017.  On December 19, 2016, the Plaintiffs filed their first Amended Complaint. The claims are based on retaliation under Title VII, hostile work environment based upon retaliation, and for injunctive relief (Doc. 19)**.**  The Court entered a Case Management and Scheduling Order on December 22, 2016. (Doc.20) On page 1 of this Order it provided that there would be a March 31, 2017 deadline for "Motions to Add Parties or to Amend Pleadings".

2.   During a significant portion of the time frame contained in the Complaints, Ms. Hernandez, a coworker of the Plaintiffs under the same supervisors as the Plaintiffs, experienced sexual harassment, a hostile work environment and retaliation for opposing those actions.  She filed Equal Employment Opportunity (EEO) claims informally on July 28, 2016 and her formal complaint of discrimination on September 8, 2016.  However, it could have been argued she had not exhausted her administrative remedies because the 180 days had not passed.  This also allowed the Defendant to be involved in, and become familiar with her administrative complaint.  At the time of the Case Management Conference, we informed the AUSA handling the Federal Complaint that we would be moving to add Ms. Hernandez. Counsel said he would review her claims and let us know his position on joinder.  The 180 days passed in early March and on Friday, March 17, 2017 he advised the undersigned he would object because after reviewing the Report of Investigation (ROI) he believes the claims are not substantially similar.

**Discussion**

3.   Rule 20 of the Federal Rules of Civil Procedure allows the joinder of parties if the Plaintiffs assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and any question of law or fact common to all Plaintiffs will arise in the action. Plaintiffs and Ms. Hernandez have worked together for years as ultrasound technologists in the James A. Haley VA Hospital Radiology Department.  See ¶s 4-7 of the Second Amended Complaint (SAC). They have had the same supervisors.  *Id*.

4.    The original three Plaintiffs and Ms. Hernandez assert rights to relief arising out of the same transactions, occurrences, or series of transactions or occurrences and there are questions of law or fact common to all Plaintiffs which will arise in this action.

5.   The Eleventh Circuit has addressed Rule 20 in a discrimination case in *Alexander v. Fulton County, GA,* 207 F.3d 1303 (11th Cir. 2000) *overruled on other grounds, Manders v. Lee,* 338 F.3d 1304 (11th Cir. 2003).  *Alexander* formed the basis of a Southern District of Florida decision to deny severance in a discrimination case.  See e.g., *Beckford v. Dept. of Corrections, Fla.,* (2008) WL 8192939 [* 2-3] (S.D. Fla. 2008).  In *Alexander* the court addressed specific language of the rule, its central purpose, notions of judicial economy and the Supreme Court's desire that lower courts employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy. *Id.* at 1323.  It noted that the phrase transaction or occurrence under Rule 20(a) looks to "logically related events".  *Id.*.  The court noted that in discrimination cases, allegations of a "pattern or practice" of discrimination describe logically related events.  Company practices provide that logical relationship.  Such an allegation is in ¶8 of the SAC and reflected in its subsequent paragraphs. These will be discussed further below.

6.    The second prong of Rule 20 relating to common questions of law or fact the court notes that in discrimination cases, courts "have found that the question of the discriminatory character of the Defendants' conduct can satisfy the commonality requirement of Rule 20." *Id.* at 1324.  The retaliation and hostile work environment arise under Title VII and satisfy the second prong of Rule 20.  *See e.g., Alexander* at 1324.

7.    The original three plaintiffs and Ms. Hernandez all allege that they were retaliated against by Radiology Service management which was over the Ultrasound Department in which they all worked.  Supervisors who are the subject of their complaint are the same.  The time period for the original plaintiffs' claims is longer than Ms. Hernandez' time period, but, for a substantial period when it was happening to Ms. Hernandez, it was also happening to the three original plaintiffs.  See ¶s 19 to 32 of the SAC.  The retaliation in all their cases is for EEO activity.  It is alleged that at one point EEO activity in each of their cases involved opposing sexual harassment.  Indeed, it is alleged the original three Plaintiffs opposed Ms. Hernandez' harassment.  See EEOC Enforcement Guidance on Retaliation and Related Issues, No. 915.004 II B Opposition (August 25, 2016) p.8-9 of 57, which provides in part:

> . . . [A]n individual is protected from retaliation for opposing any practice made unlawful under the EEO laws.  Protected "opposition" activity broadly includes the many ways in which an individual may communicate explicitly or implicitly opposition to perceived employment discrimination.  The manner of opposition must be reasonable, and the opposition must be based on a reasonable good faith belief that the conduct opposed is, or could be unlawful.

8.    It is also alleged that EEO activity includes participation in their own and others filed claims.  *Id.*  § II A1 Participation p. 7 of 57 which provides in part:

> . . . An individual is protected from retaliation for having made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, the ADEA, the EPA, the ADA, the Rehabilitation Act, or GINA.  Participation may include, for example, filing or

serving as a witness in an administrative proceeding or lawsuit alleging discrimination.

9.   The hostile work environment claims also have a logical relationship to each other.

### Brief History When Only Three Original Plaintiffs Had Filed Claims

10. In 2011 and 2012 six women claimed they had been sexually harassed by Radiology management, specifically John Bennett and, in all but one case, Dr. Joseph Parise. They also maintained that supervisor, Jeri Graham, aided and abetted that harassment and supervisory management above those three were told about what was going on and not only failed to stop it, but took steps to cover it up.  While all opposed the harassment, only five brought EEO actions.  Each of those five brought EEO actions alleging *inter alia,* retaliation. Each of those five faced retaliation.  Four, including the original three Plaintiffs, filed actions in 2012, the fifth in 2013.  The 2012 cases of the four were combined and settled for damages, attorneys' fees and corrective actions in September, 2013.  One of those four left the VA because of the harassment before the case was resolved, but continued her case until settlement.  The three original plaintiffs in this case remained at the VA and along with the fourth moved forward with their cases to settlement.  The retaliation allegations in their case involved, *inter alia,* interference with their ability to perform their jobs, verbal threats, accompanied with threats of physical harm and other harm, impairment of career and a consistent effort to undermine the legitimacy of the Plaintiffs actions and portray them as employees who were making malicious claims.  Their reputations were impugned with individuals within the Radiology Service, the broader facility and with some people outside the facility.

11.  Following the settlement of those cases, retaliation which formed the basis of the current case, began almost immediately.  Management, as they had done when investigating the original complaints of harassment, failed to undertake good faith investigations and actions they maintained they would take as a result of the settlement agreement.  See ¶s 18 and 19 of the SAC.  For example, the alleged investigation into comments and threats made by Dr. Parise reported by a radiology physician were found not to be actionable based on an investigation in which the physician who heard Dr. Parise's threats was purported to have said things which were quite materially contradicted by what he said before.   It also contradicted sworn testimony the physician gave about what Dr. Parise said and as well as what he said he told the investigator.  The investigator did not record or have the physician sign or agree to the statement.  We are left with the uncorroborated statement of a single employee, who is subordinate to the upper management officials overseeing the Radiology Service.  We obtained this statement by compulsory discovery processes.  Even more troubling, the settlement agreement, which was supposed to be confidential, was disclosed to an individual who will be discussed extensively under Ms. Hernandez' case.  The circumstances of that disclosure suggest that the settlement was broadly discussed as part of an effort to disparage the Plaintiffs and portray them as gold diggers.  During this time the Plaintiffs continued to hear statements that they were being portrayed as people who would never get over their case and had done it for money.  See ¶ 17 of the SAC.

12. More troubling, the fact that the Plaintiffs had engaged in EEO activity was placed on a facility wide intranet site so that many employees could see selective documents which reflected that they engaged in EEO activity and we believe this was done to place them in a bad light of accusing those employees of having bad motives in undertaking their EEO

cases.[2]  See ¶ 20 of the SAC. Written counselings which the settlement agreement required the Agency to remove and completely expunge from the files relating to Davis and Strauser were also disclosed on the intranet as were other documents many of which were found by the VA Privacy Office to have been privacy protected documents.  The Privacy Office ordered radiology to conduct an investigation.  That investigation was in fact conducted by John Bennett who made statements through a letter he prepared for the Radiology Service Chief (Stenzler) to Privacy concerning the results of that investigation.  It included alleged findings by an employee Radiology claimed did the investigation.  Discovery depositions disclosed that the statements Bennett had Stenzler send to Privacy reflecting the conclusions of the employee were contradicted by the individual alleged to have conducted the investigation. See ¶21 of SAC. It has also been discovered that Bennett who was supposed to be removed from the chain of command of the Plaintiffs was actually promoted and regularly meets with the supervisors of the Plaintiffs, including Jeri Graham and Scott Petrillo.

13.  After settlement, Plaintiff Tonkyro was told by the Service Chief of Radiology (Stenzler) that she could not receive promotions and that upper management would never place her in supervisory positions. See ¶ 28b of SAC.  Subsequently, positions have been approved which would have resulted in promotions and the Plaintiffs have been denied those promotions and been provided with one contradictory reason after another. See ¶s 28, 29 and 30 of SAC.  Moreover, the Plaintiffs have been placed in a hostile environment where the ultrasound department was understaffed and the Plaintiffs, because of their experience and abilities were relied upon to do a great deal of work to make up for both staffing deficiencies and also hiring decisions which did not involve hiring people knowledgeable about ultrasound

---

[2] The disclosure of documents reflecting EEO activity was found to be evidence of retaliation in *Mogenhan v. Napolitano,* 613 F.3d 1162, 1166 (D.C. Cir. 2010) and *Halliburton, Inc. v. Administrative Review Board.,* 771 F.3d 254 (2014).

activity which panels recommended should be hired. *Id.* Not surprisingly, the Plaintiffs have been implicated in resulting problems. See ¶s 24-27 of SAC. It also alleged bringing sexual harassment of other ultrasound technologists to the attention of supervisors who failed to address it while continuing to disparage the Plaintiffs. That involved Hernandez although her name was not used in the Complaint. The overall environment has become problematic and hostile.

### The Second Amended Complaint (SAC)

14. The SAC realleges the post settlement retaliation of the original Plaintiffs and adds Ms. Hernandez. See ¶ 31 of the SAC. Ms. Hernandez, who had provided a December 30, 2014 affidavit in Davis' case, began to experience sexual harassment from an employee management brought in, and when she opposed the harassment, she was retaliated against, and held in a bad light by management. Given the understaffing in ultrasound, Ms. Hernandez was also exposed to increased stress because she had to perform extra work. This was compounded by the fact the supervisor of ultrasound, Petrillo, had no experience with ultrasound, and could not or did not address the issues that came up. Moreover, Petrillo favored male technologists hired after Hernandez who had an impaired ability to fully perform their portion of the responsibilities. Given the understaffing and Petrillo's preference of those males, Ms. Hernandez as well as the original Plaintiffs, experienced a much more problematic work environment.

15. Davis, who is the lead technologist and far more experienced in ultrasound than Petrillo or any other supervisor above him, was on committees which recommended the hiring of various ultrasound technicians. It also rejected certain ultrasound technicians that did not have the capability to do the job. Management ignored her and the panel recommendations to

hire certain individuals and instead, without advising Davis or other members of ultrasound, hired someone their panel had previously rejected. That person repeatedly boasted to several people of having a relationship through her mother with Jeri Graham. That person is Angela Geraci DeSimone, hereinafter referred to as "AG".

16. Shortly after she was hired, AG proceeded to engage in repeated sexual harassment of Hernandez and when Hernandez complained, management did nothing to stop it. AG not only continued that harassment, she harassed her in other ways, including bullying. See ¶ 31 of the SAC. AG also admitted that she was unable to do important ultrasound scans which need to be done in a Veterans Hospital. She developed a hostile relationship with Hernandez, often ignored her, bullied her, and interfered with her (Hernandez) ability to perform her own job. As had happened to the original Plaintiffs, when these matters were brought to management, management not only failed to address them, they allowed AG to continue to harass and bully Ms. Hernandez. When objections to the treatment of Hernandez were being made by the original Plaintiffs and Hernandez was sending emails documenting her difficulties, management, as they had done with the original Plaintiffs, instituted an AIB to investigate the hostile work environment that had been created <u>by the Plaintiffs</u> against AG.[3] See ¶31 ff to hh and jj of the SAC. AG was moved to New Port Richey where her mother is located, a desirable relocation, even though she would be the only ultrasound technician there and she is not competent to be on her own. Management recognized that she was not competent to do many different ultrasound scans by herself and told the Plaintiffs that they would have to do those exams even for New Port Richey patients. That created difficulties for all of them in their work.

---

[3] We have not been provided a copy of that investigation at this point in time. We expect it will be fairly provided when we receive responsive discovery.

17.  In addition to the allegations made by the original Plaintiffs discussed above, all four Plaintiffs have alleged that the retaliation included: members of management using various means to undermine the plaintiffs' ability to perform their jobs; management hiring supervisors over ultrasound who have no knowledge or experience with ultrasound procedures or techniques while ignoring competent experienced persons who sought the supervisor positions; management allowing ultrasound to be short staffed; management hiring incompetent technologists to work in ultrasound despite prior decisions by ultrasound technologists and hiring panels which has resulted in a greater workload increased stress and a problematic work environment which has fallen primarily on them; management refusing to address their concerns and instituting administrative investigations to look into hostile work environments that they supposedly created by raising these concerns;  management giving each (except Tonkyro) improper counselings, or improperly disclosing them; management portraying them as trouble makers; and management harming their reputations.  Each alleges that when they opposed what was going on, their concerns were not addressed in good faith and management engaged in an effort to victimize the victims.  Management hired AG, who not only caused problems for Hernandez, Strauser and Davis, she sexually harassed, bullied and otherwise harassed Hernandez and when each complained to management, nothing was done.  AG spread rumors that the original three Plaintiffs' settlement was for over one hundred thousand dollars; and, just like management, AG accused the Plaintiffs of bad motives in bringing the case.  AG also made disparaging remarks to Hernandez about Davis, Strauser and Tonkyro.   Hernandez learned AG was spreading those rumors to other employees.

18.  As to common issues of law, each of their cases arises under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e et seq. including 42 U.S.C. § 2000e(16).  As to common issues of fact, each requires determination as to whether the same managers in overlapping timeframes engaged in retaliation and a hostile work environment.  In Hernandez' case the hostile work environment is based upon sex and retaliation.  In fact, Strauser and Davis and to a lesser extent Tonkyro are witnesses to a number of the events of which Ms. Hernandez complained.  Ms. Hernandez is a witness to events of which they complained. They each complain of the failure of supervisors over the Ultrasound Department to address their complaints of a hostile work environment.  Each complained that Petrillo, at the instigation of upper management, hired AG who was incompetent.  As mentioned AG had previously been interviewed by a panel consisting of knowledgeable members of ultrasound and rejected as an applicant.  Since coming on AG has proved incapable of performing numerous vital ultrasound exams.  Management has made her inability a problem for each of the plaintiffs by requiring them to not only perform additional work to cover for her, but to train her.  AG has also sexually harassed Hernandez and bullied her. Davis, Strauser and certain other employees have observed portions of this as well as management's refusal to address her complaints and the effect that has had upon her.[4]

19.  This is not a case where the plaintiffs have different supervisors, are in different department or services, or in different states.  In addition, the retaliation alleged did not occur in time periods which did not overlap.  Cases like *Grayson v. K-Mart Corporation,* 849 F. Supp. 785 (N.D. Ga. 1994) are inapplicable.  While Hernandez has a basis for her hostile

---

[4] Exhibit C  is the counselor's Report of Investigation (ROI) in the Hernandez investigation.  The court will note that Davis and Strauser are identified as providing information on a number of claims that are raised by Ms. Hernandez.  The court may also wish to note that after management provided its denials or reasons for actions or a lack thereof, the ORM investigator concludes "Complainant <u>refuted</u> management's response and reiterated her testimony." P.0103  (Emphasis added.)

work environment which includes sexual harassment as well as retaliation, that does not impair joinder.  While one might argue that creates more commonality to the Plaintiffs, it is not necessary because numerous cases recognize there does not have to be absolute identity of all events or basis.  *See e.g., Moseley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974) (two race only plaintiffs and eight race and sex plaintiffs were joined); *Elliott v. USF Holland, Inc.,* 2002 WL 826405 [*2] (S.D. Ind. 2002) (three plaintiffs had age based claims and could be joined even though one also had disability); *Castillo v. Lennar Corp.,* 2008 WL 4425298 [*1,2] (S.D. Tex. 2008).

20.  There can be no unfair prejudice to the Defendants.  Conversely, if separate trials went forward, judicial economy would be a victim.  Each of the plaintiffs would end up testifying in the cases of the other.  See *Goldsmith v. Bagby Elevator, Co.,* 513 F.3d 1267 (11th Cir. 2008).  The combined length of each of those cases would dwarf a single trial.  The expense of that would unfairly impact the Plaintiffs.

21.  Ms. Hernandez and the Plaintiffs all assert hostile work environment claims based on retaliation for EEO activity.   As will be discussed, this provides another reason for joinder. Similarly, each asserts that some of the retaliation against them occurred in part as a result of third party retaliation against each of them as a result of the EEO activity of the other, or by themselves.  (¶ 32 of SAC and numerous other paragraphs reflect this.)  *See Thompson v. North American Stainless, L.P.,* 562 U.S. 170, 131 S. Ct. 863 (2011) (third party retaliation states cause of action).  The hostile work environment also includes the discriminatory or retaliatory acts taken against each of them as set forth in paragraph 8 of the Second Amended Complaint.   In *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415-1416, (10th Cir. 1987) the court discussed the question of whether incidents of harassment directed at employees other

than the Plaintiff can be used as proof of the Plaintiff's claim of a hostile work environment and concluded that:

> The answer seems clear: one of the critical inquiries in a hostile environment claim must be the *environment*.   Evidence of a general work atmosphere therefore – as well as evidence of specific hostility directed toward the Plaintiff – is an important factor in evaluating the claim.   Indeed, "such evidence could be critical to a Plaintiff's case, where a claim of harassment cannot be established without a showing of the isolated indicia of a discriminatory environment." [citation omitted].

This has been widely accepted by federal courts including the Eleventh Circuit. *See Walker v. Ford Motor Company*   684 F.2d 1355, 1359 (11th Cir. 1982) (recognizing that harassment need not be directed at the Plaintiff to create "a working environment heavily charged with ethnic or racial discrimination."); *Sousa v. Bay Shore Development Corporation,* 1994 U.S. Dist. LEXIS 10984, *12 (S.D. Fla. 1994) ("the Eleventh Circuit and many other federal courts have consistently allowed Plaintiffs to sue under Title VII for harassment not directed at the Plaintiff, but directed at members of the Plaintiff's protected class in the Plaintiff's presence.); *Hernandez v. Valley View Hospital Association,* 684 F.3d 950, 959 (10th Cir. 2012) ("derogatory comments need not be directed at or intended to be received by the victim to be evidence of a hostile work environment"; since the "totality of the circumstances" is "the touchstone of a [hostile work environment] analysis, "evidence of a general work atmosphere, including evidence of harassment of other racial minorities may be considered in evaluating a claim, as long as [the Plaintiff] presents evidence that [she] knew about the offending behavior."); *Tademy v. Union Pacific Corporation,* 614 F.3d 1132, 1146 (10th Cir. 2008) ("evidence of a general work atmosphere, including evidence of harassment of other [racial minorities], may be considered in evaluating a claim," as long as the Plaintiff presents evidence that he knew about the offending behavior.)   *See also Goldsmith v. Bagby Elevator*

*Co. Inc.* 513 F.3d 1267, 1286 (11th Cir. 2008) (Plaintiff's "me too" evidence was also admissible under Rule 402 as relevant to his claim of hostile work environment since "this testimony goes directly to the issue of racial harassment on the job" and the evidence "established the recurrent use of racial slurs by employees of [the Defendant] and proved that any black employee who complained about racial discrimination was treated differently by supervisors and was ultimately terminated.") The claims of the four Plaintiffs are inextricably intertwined and involve the same work environment and supervisors during the same basic time period.

22.   Each plaintiff alleges the retaliation claims by the same responsible management officials (RMOs).   Those claims include direct retaliation against each and third-party retaliation as a result of the EEO activity of the other Plaintiffs. Each Plaintiff and Ms. Hernandez was familiar with the hostile work environment involving the other Plaintiffs and the RMOs treatment of them contributed to each of their hostile work environment claims. This provides yet another reason the claims arise from the same series of the transactions and occurrences and have the same questions of law or fact.

23.   After a responsive complaint or pleading has been served, the standards for deciding a motion to amend a complaint or add a party are the same under Rule 15 or Rule 21. *Loggerhead Turtle v. County Council of Volusia County,* 148 F.3d 1231, 1255 (11th Cir. 1998); *Datastrip International Ltd. v. Intacta Technologies,* 253 F. Supp. 2d 1308, 1318; 2003 U.S. Dist. LEXIS 4771 **26-27 (N.D. Ga., 2003). In *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) the Court stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad
> faith, or dilatory motive on the part of the movement, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc. –the leave sought should as the rules require, be "freely given."

See also: *Hawkins v. Fulton County*, 95 F.R.D. 88, 91; 1982 U.S. Dist. LEXIS 13809, ** 5 (N.D. Ga, 1982) (joinder has been allowed more than two years after commencement of the action).

24.  There is no evidence here that Plaintiffs intend to cause undue delay or acted in bad faith or had a dilatory motive.  The case has started, the discovery deadline is months away.  Trial is not until next year 2018.  The Defendant has been aware of Ms. Hernandez' claims from the time they were informally filed and the existence of those claims was made known to current Agency counsel at the initial meeting to discuss this case.

### Good Faith Consultation

The undersigned has spoken to the Defendant's attorney who indicated that Defendant opposes the motion and filing of the Second Amended Complaint.

Wherefore, Plaintiffs request leave to file the attached Second Amended Complaint.

Respectfully submitted,

*s/  Joseph D. Magri*
Joseph D. Magri
Florida Bar No.: 0814490
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609-3452
Tel.: (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 30, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Scott H. Park
Assistant United States Attorney
Identifying No. USA 084
400 W. Washington, Street, Suite 3100
Orlando, FL 32801
Telephone: (407) 648-7543
Facsimile: (407) 648-7588
Email: Scott.Park@usdoj.gov

Peter J. Grilli, Mediator
Florida Bar No. 237851
3001 West Azeele Street
Tampa, FL 33609
Telephone: (813) 874-1002
Facsimile: (813) 874-1131
Email: peter@grillimediation.com

*/s/  Joseph D. Magri*
Joseph D. Magri